# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

MARTIN G. MONTOYA,

    Plaintiff,

v.                                                                                   Civ. No. 20-880 KK

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER[1]

THIS MATTER is before the Court on Plaintiff Martin G. Montoya's Motion to Reverse and Remand (Doc. 23) filed on May 17, 2021. The Acting Commissioner of the Social Security Administration ("Commissioner") filed a Response, and Mr. Montoya filed a Reply. (Docs. 25, 26.) Having meticulously reviewed the entire record and the relevant law and being otherwise fully advised, the Court finds that the Motion is well-taken and should be GRANTED.

## I. Background and Procedural History

Mr. Montoya brings this suit pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal of the Commissioner's decision denying his claims for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI"). (Doc. 1.) Mr. Montoya filed claims for DIB and SSI on October 2, 2014, alleging disability since October 1, 2013 due to traumatic brain injury ("TBI"), back problems/pain, acid reflux, depression, anxiety, ADHD, obesity, polysubstance abuse, and learning difficulties. (AR 123, 412.)[2] After his claim was denied initially

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct proceedings and enter judgment in this case. (Doc. 12.)

[2] Citations to "AR" refer to the Certified Transcript of the Administrative Record filed on March 17, 2021. (Doc. 22.)

and upon reconsideration, Mr. Montoya appeared at a hearing before an Administrative Law Judge ("ALJ") on June 29, 2017, and received an unfavorable determination on January 30, 2018. (AR 77–120, 195–223.) On March 13, 2019, however, the Appeals Council vacated and remanded the ALJ's decision due to his failure to incorporate all of Mr. Montoya's mental limitations into the assessed residual functional capacity ("RFC").[3] (AR 225–26.)

In accordance with this instruction, the ALJ held a second hearing on October 17, 2019, during which he heard testimony from Mr. Montoya and from an impartial vocational expert ("VE"). (AR 41–69). On January 9, 2020, the ALJ once again issued an unfavorable ruling. (AR 13–40). Although the ALJ found that Mr. Montoya suffered from the severe impairments of "right leg fasciotomies and musculotendinous tear of the medial head of the gostrocnemius [sic] muscle, obesity, organic mental disorders due to traumatic brain injury, and substance abuse disorders," he determined that these impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 19.) The ALJ found that Mr. Montoya had the capacity to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with some additional limitations. (AR 22.) Because jobs existed in the national economy that an individual with Mr. Montoya's RFC could perform, the ALJ determined that Mr. Montoya was not disabled. (AR 30–31).

The Appeals Council denied review, and the ALJ's decision became administratively final on June 30, 2020. (AR 1–3.) Mr. Montoya's Motion is now before the Court.

## II. **Standard of Review**

Judicial review of the Commissioner's denial of disability benefits is limited to whether

---

[3] Specifically, the Appeals Council remanded the case because although the ALJ found that Mr. Montoya had moderate limitations in interacting with others, the assessed RFC erroneously "reflect[ed] that the claimant was able to respond appropriately to supervision and co-workers." (AR 225.)

the final decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (citation omitted). This constitutes "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118 (citation omitted), or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The Court's examination of the record as a whole must include consideration of "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

### III.  Analysis

Mr. Montoya contends reversal is warranted because the ALJ (1) improperly rejected the opinions of Agency examiners Paula Hughson, MD, and Steven K. Baum, PhD, and (2) failed to account for all of Mr. Montoya's mental limitations in assessing his RFC.

### A.  Weight Assigned to Dr. Hughson's Opinion

The Court turns first to Mr. Montoya's assertion that the ALJ erred in assigning only "some weight" to Dr. Hughson's opinion. Medical opinions must be weighed using the factors set forth

in 20 C.F.R. §§ 404.1527(c), 416.927(c)[4], which comprise (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors. However, "[n]ot every factor for weighing opinion evidence will apply in every case," SSR 06-03p, 2006 WL 2329939, at *5, and the ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, what is required is that the ALJ provide good reasons for the weight he gives an opinion and that his explanation is sufficiently specific to make it clear to any subsequent reviewers the weight given to an opinion and the reasons for that weight. *See id*.

Paula Hughson, MD, examined Mr. Montoya on January 13, 2015 and assessed several "marked" and numerous "moderate" functional limitations in the areas of understanding and remembering, sustained concentration and task persistence, social interactions, and adaptation. (AR 657.) She diagnosed cognitive disorder secondary to TBI; mood disorder secondary to TBI; and past history of sustained cocaine abuse, in full sustained remission. (AR 655.) In her narrative assessment, Dr. Hughson noted "marked difficulty with executive functioning, tolerating frustration, or managing complex interpersonal situations," and stated:

> This evaluation is limited by a lack of specific records, especially the results of Mr. Montoya's neuropsychological testing. The records provided, two outpatient progress notes, from February and March 2014 briefly refer to TBI as a "resolved" problem. Based on his presentation today, and on the history he provided, Mr. Montoya's mood and cognitive problems secondary to TBI are very much still in evidence and continue to pose very clear limitations in his functioning, as compared to before these traumatic events.

(AR 655.) Dr. Hughson opined that Mr. Montoya "would benefit from some type of

---

[4] The SSA has issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. §§ 416.927, 416.920c. Because Mr. Montoya filed his claims in 2014, the previous regulations still apply to this matter. *See id.*; (AR 123, 412.)

advocate/assistant who could help him sort out things like housing and family demands, and support him in establishing and maintaining social and leisure activities, for example exercise." (AR 656).

The ALJ assigned only "some weight" to Dr. Hughson's opinion, with the following explanation:

> I give some weight to the opinion by Paula Hughson, MD, who examined the Claimant on January 13, 2015. (Ex 2F) Dr. Hughson had diagnosed cognitive disorder secondary to traumatic brain injury, mood disorder secondary to traumatic brain injury, and a past history of cocaine use. She assessed a GAF of 45 to 48. She estimated that the Claimant had an average intelligence. Dr. Hughson stated that the Claimant's mood was labile and that it met the criteria for major depression. The examining psychiatrist opined that the Claimant had marked difficulty with executive functioning, tolerating frustration, or managing complex interpersonal interactions. She stated that based on the nature of the Claimant's cognitive deficits and the time elapsed since his injuries, significant improvement in functioning that would enable him to be self-supportive, seemed quite unlikely.
>
> However, Dr. Hughson stated that her examination was limited by the lack of specific records, especially the results of the Claimant's neuropsychological test. At the time of the examination, Dr. Hughson only had two outpatient notes from February and March of 2014. (Ex 2F/5) As Dr. Hughson was unable to review the neuropsychological test, which concluded that the Claimant did not suffer long term affects [sic] from his brain injury, I only give some weight to her opinion.

(AR 27.) The Commissioner contends that the ALJ "offered valid reasons for discounting Dr. Hughson's conclusions, lack of support and consistency." (Doc. 25 at 16.) For the reasons that follow, the Court disagrees.

While the ALJ was not required to adopt Dr. Hughson's opinion in formulating Mr. Montoya's RFC, he was required to explain the weight assigned to it in a manner that would allow a reviewing court to follow his reasoning. *Keyes v. Zachary-Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (quoting SSR 06-03p, 2006 WL 2329939, at *6). In this instance, the only reason[5] given

---

[5] The Commissioner also cites "lack of support" as a valid reason for discounting Dr. Hughson's opinion. (Doc. 25 at 16.) This refers, presumably, to Dr. Hughson's statement that her evaluation was "limited" by a lack of specific records. (AR 655.) However, neither the Commissioner's brief nor the ALJ's written decision references any specific

5

for discounting Dr. Hughson's opinion—which, as the ALJ described, was based upon examination by a specialist and objective medical testing—was its alleged inconsistency with the results of Dr. King's January 31, 2012 neuropsychological evaluation.[6] This line of reasoning is problematic for two reasons.

First, as the Commissioner acknowledges (Doc. 25 at 14), the ALJ appears to discount only a discrete portion of Dr. Hughson's opinion: namely, her prognosis that "[b]ased on the nature of [Mr. Montoya's] cognitive deficits and the time elapsed since his injuries, significant improvement in functioning—that would enable him to be self supportive for example—seems quite unlikely." (AR 655–56.) However, the bulk of Dr. Hughson's examining opinion dealt not with Mr. Montoya's future odds of improvement but with his present functional limitations. (AR 655–57) (describing "marked" difficulties in multiple areas of functioning). The ALJ failed to explain how Dr. Hughson's opinions regarding Mr. Montoya's functional limitations, as distinct from her opinion regarding the likelihood of future improvement, conflicted with Dr. King's assessment. Nor is such conflict implicitly clear to this reviewing Court. *C.f. Keyes*, 695 F.3d at 1166 (holding that where the reviewing court can follow the adjudicator's reasoning, "merely technical omissions in the ALJ's reasoning do not dictate reversal"). Although it was within the ALJ's discretion to credit Dr. King's finding that Mr. Montoya's psychological symptoms did not result from his TBI,

---

medical record, apart from Dr. King's neuropsychological evaluation, that conflicts with Dr. Hughson's examination findings.

[6] Dr. King opined that Mr. Montoya's psychological symptoms resulted from pre-existing ADHD in combination with depression, rather than from his TBI. His report stated, in relevant part: "There was no conclusive evidence that Mr. Montoya suffered long-standing neurocognitive deficits as a result of his 5/29/11 accident. Rather, the most parsimonious explanation is pre-existing ADHD in combination with current depressive episode was exacerbating those premorbid ADHD problems." (AR 920.) Dr. King also noted that Mr. Montoya's "[r]eaction time was markedly atypically slow" and concluded that he suffered from a "clinically significant attention problem." (AR 918.)

it is not clear how this finding[7] contradicted Dr. Hughson's opinion about the functional limitations those symptoms imposed. At most, the ALJ gave reasons for discounting (1) Dr. Hughson's opinion about the *origin* of Mr. Montoya's symptoms, and (2) Dr. Hughson's opinion about the probability that Mr. Montoya's symptoms would significantly improve in the future. Notably, however, the ALJ did not cite any record findings or evidence of a significant change in mental functioning after 2015. On the contrary, the ALJ assigned "great weight" to Dr. King's opinion based on the evaluation conducted in 2012. (AR 28.)

Second, to the extent the ALJ did explain the weight assigned to Dr. Hughson's opinion, that explanation was internally inconsistent. The ALJ assigned only "some weight" to Dr. Hughson's opinion because she "was unable to review the neuropsychological test, which concluded that the Claimant did not suffer long term affects [sic] from his brain injury." (AR 27.) The clear implication of this statement is that the ALJ adopted Dr. King's finding that Mr. Montoya's psychological symptoms were not the result of his TBI. Nevertheless, the ALJ repeatedly referenced Mr. Montoya's TBI throughout his decision; found a severe impairment of "organic mental disorders due to traumatic brain injury" at step two of his analysis; and, in determining Mr. Montoya's RFC, "limited the Claimant to understanding, carrying out, and remembering simple instructions *because of his brain injuries caused by his accidents*") (emphasis added). (AR 19, 29). In other words, the ALJ's decision appears to espouse two opposite and incompatible views about the origin of Mr. Montoya's symptoms. Based on this plain inconsistency, it is impossible for the Court to determine whether Dr. King's contrary finding

---

[7] The Court notes, for the sake of completeness, that the opinions of Dr. Hughson and Dr. King diverged in some other meaningful respects. Although Dr. King diagnosed "clinically significant attention problems," the functional limitations that he identified were overall less severe and wide-ranging than those identified by Dr. Hughson. (AR 913–21.) However, the ALJ neither discussed these differences nor cited them as reasons for discounting Dr. Hughson's opinion. It is beyond the scope of this Court's review to "create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007).

represented a valid reason for discounting portions of Dr. Hughson's opinion.

In sum, the ALJ was required either to incorporate the functional limitations identified by Dr. Hughson into Mr. Montoya's RFC or to explain his reasons for declining to do so. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding reversible error where the ALJ failed to explain why he adopted some of the consulting mental health professional's restrictions but not others). Because the ALJ did neither, the Court agrees with Mr. Montoya that the ALJ committed reversible error in his assignment of weight to Dr. Hughson's opinion.

### B. Remaining Claims of Error

Having concluded that remand is warranted, the Court will not address Mr. Montoya's remaining claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (explaining that the reviewing court does not reach issues that may be affected on remand). Nonetheless, in the interest of forestalling future error, the Court indicates its significant concern with the ALJ's assignment of weight to the opinion of examining psychologist Steven K. Baum, PhD. The ALJ assigned only "some weight" to Dr. Baum's opinion because the severe functional limitations that he identified were "not consistent with the ability to obtain an Associate Degree, nor are they consistent with the ability to play softball." (AR 26.) This was the sole reason given for discounting Dr. Baum's detailed expert assessment, which, like Dr. Hughson's opinion, was based on both medical examination and psychological testing. *See* 20 CFR 404.1527(c) (an ALJ must consider examining relationship, supportability by objective medical testing, and specialization in weighing medical opinions). As the Commissioner admits, Mr. Montoya did not, in fact, obtain an associate degree, though he completed a number of credits and obtained a general studies degree. (Doc. 25 at 17–18). Moreover, the ALJ's decision made no mention of Mr. Montoya's testimony that he received disability accommodations and that he "had to take multiple

8

classes . . . two to three times over." (AR 56–57.)

In weighing the evidence, it is the ALJ's duty to "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citation omitted). Though the Court will not undertake a complete analysis of Mr. Montoya's additional claims at the present procedural stage, there is significant doubt that the ALJ fulfilled this duty in his treatment of Dr. Baum's opinion. Future administrative decisions should evince a more reasoned and thorough consideration of Mr. Montoya's educational background as it relates to his functional limitations.

## IV. **Conclusion**

For the reasons stated above, IT IS HEREBY ORDERED that Mr. Montoya's Motion to Reverse and Remand (Doc. 23) is GRANTED. The decision of the Commissioner is hereby REVERSED, and this action is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
United States Magistrate Judge
Presiding by Consent